# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **HARRY E. BOWERS,** ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 2:09cv00005 |
| ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, ) | |
| **Commissioner of Social Security,** ) | By: PAMELA MEADE SARGENT |
| Defendant ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Harry E. Bowers, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2009). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

-1-

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Bowers protectively filed his current applications for DIB and SSI on December 15, 2006, alleging disability as of October 11, 2006, due to arthritis, stomach problems and carpal tunnel syndrome. (Record, ("R."), at 61-63, 70, 103, 309-15.) The claims were denied initially and upon reconsideration. (R. at 25-27, 31-33, 34, 298-300, 306-08.) Bowers then requested a hearing before an administrative law judge, ("ALJ"). (R. at 36-37.) The ALJ held a hearing on March 18, 2008, at which Bowers was represented by counsel. (R. at 321-66.)

By decision dated June 16, 2008, the ALJ denied Bowers's claims. (R. at 15-21.) The ALJ found that Bowers met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2010. (R. at 17.) The ALJ also found that Bowers had not engaged in substantial gainful activity since October 11, 2006, the alleged onset date. (R. at 17.) The ALJ determined that the medical evidence established that Bowers suffered from severe impairments, namely degenerative joint disease of multiple joints, chronic lumbar strain, peripheral neuropathy of both lower extremities, hypertension, status post hernia repair and possible early chronic obstructive pulmonary disease, but he found that Bowers did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17-18.) The ALJ found that Bowers had the

residual functional capacity to perform medium work[1] limited by an inability to perform more than occasional climbing, kneeling and crawling and further limited by an inability to work at unprotected heights, around hazards or machinery and around fumes and irritants. (R. at 18-19.) The ALJ further found that Bowers needed the ability to stop and stretch once or twice an hour, to use the bathroom on normal breaks and to stop and think about what he was doing approximately three to four times per hour for very short periods of time without being off task due to a moderate reduction in his ability to maintain attention and concentration. (R. at 19.) Thus, the ALJ found that Bowers was able to perform his past relevant work as a forklift operator and a service representative/merchandise displayer. (R. at 20.) Therefore, the ALJ found that Bowers was not under a disability as defined under the Act at any time through the date of his decision and was not eligible for benefits. (R. at 21.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f) (2009).

After the ALJ issued his decision, Bowers pursued his administrative appeals, (R. at 11), but the Appeals Council denied his request for review. (R. at 5-8.) Bowers then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2009). The case is before this court on Bowers's motion for summary judgment filed June 11, 2009, and the Commissioner's motion for summary judgment filed July 2, 2009.

---

[1] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2009).

## II. Facts

Bowers was born in 1950, (R. at 61, 324), which classifies him as a "person of advanced age" under 20 C.F.R. §§ 404.1563(e), 416.963(e). Bowers obtained his general equivalency development, ("GED"), diploma, and he has vocational training in refrigeration and air conditioning.[2] (R. at 120, 325.) Bowers has past relevant work as a manager at a molding factory. (R. at 117, 334.)

John Newman, a vocational expert, also was present and testified at Bowers's hearing. (R. at 355-64.) Newman classified Bowers's past work as a forklift operator as medium and semi-skilled. (R. at 356-57.) Newman classified Bowers's past work as a service representative/merchandise displayer, as performed by Bowers, as light[3] and semi-skilled. (R. at 356-57.) Newman classified Bowers's job as a training manager, as performed by Bowers, as heavy[4] and skilled. (R. at 356-57.) Newman testified that an individual who was limited as indicated by Dr. William Humphries, M.D., who had a mild reduction in concentration and who would require normal breaks throughout the day, would be able to perform Bowers's past work as a forklift operator and a service representative. (R. at 358-59.) Newman was asked to consider the same individual, but who had a moderate reduction in concentration. (R. at 359.)

---

[2]At his hearing, Bowers testified that, since leaving high school, he did not have additional education or training. (R. at 325.)

[3]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2009).

[4]Heavy work involves lifting objects weighing up to100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, he also can do medium, light and sedentary work. *See* 20 C.F.R. §§ 404.1567(d), 416.967(d) (2009).

-4-

He stated that Bowers's ability to perform his past work as a forklift operator and a service representative would not be impaired. (R. at 359.) Likewise, Newman testified that the same individual who had to have six or seven unscheduled bathroom breaks could not perform substantial gainful activity. (R. at 360-61.) Finally, Newman testified that an individual who could not repetitively use his fingers for grasping, holding or writing due to swelling and arthritis could not perform substantial gainful activity. (R. at 363.)

In rendering his decision, the ALJ reviewed records from Dr. Donald R. Williams, M.D., a state agency physician; Dr. William Humphries, M.D.; Stone Mountain Health Services; Dr. Richard Surrusco, M.D., a state agency physician; and Mountain Home Veterans Administration Medical Center.

In August 2006, Bowers presented to Stone Mountain Health Services complaining of rectal bleeding from hemorrhoids. (R. at 150.) Bowers was referred for a colonoscopy, which revealed a very small polyp. (R. at 155, 226.)

On October 11, 2006, Bowers underwent a hemorrhoidectomy at the Mountain Home Veterans Administration Medical Center. (R. at 155, 226-28.) Upon discharge, Bowers was instructed to perform activities as tolerated and to return to work as soon as possible. (R. at 212.) On November 2, 2006, Bowers reported that he was doing much better, that he had one to two bowel movements a day with no bleeding and decreasing pain on defecation. (R. at 209.) He reported that he was having no problems or pain from the surgery. (R. at 210.) On November 30, 2006, Bowers complained of right wrist pain. (R. at 208.) X-rays of his right wrist showed a

-5-

Case 2:09-cv-00005-JPJ-PMS   Document 15   Filed 10/14/09   Page 5 of 13   Pageid#: 53

ganglion cyst. (R. at 171-72, 241.)

On January 3, 2007, Bowers was admitted for a laproscopic hernia repair. (R. at 183-85.) It was reported that Bowers experienced no sensory deficit, walked frequently, moved with no limitations and ate most every meal. (R. at 183-85.) Bowers was discharged the next day with instructions to increase activity as tolerated and to return to work after her follow-up appointment. (R. at 166, 193.) He was also instructed not to lift items weighing more than five pounds for three weeks. (R. at 166, 193.) In January 2007, Bowers reported that he had bowel problems, including poor control and urgency. (R. at 292-93.)

On February 12, 2007, Bowers reported that he was doing well, eating well and having good bowel movements. (R. at 268.) Bowers was scheduled for an excision of his right wrist cyst; however, the surgery was cancelled because the cyst was not palpable. (R. at 262.) In December 2007, Bowers complained of weakness and swelling in his hands and feet. (R. at 281, 284.) Bowers reported that he had a bowel movement daily at 6:00 a.m. (R. at 282.)

On March 13, 2007, Dr. William Humphries, M.D., examined Bowers for his complaints of arthritis pain. (R. at 138-42.) Bowers was able to get on and off the examination table without difficulty and walked with a normal gait. (R. at 140.) Joint range of motion in the lower extremities was "slightly" reduced in both hips and "minimally" reduced in both knees with some "mild" synovial thickening of the toe joints. (R. at 140.) Bowers had "mild" sensory loss in both feet, but was able to bear weight on each leg. (R. at 140.) Joint range of motion of the upper extremities was

"slightly" reduced in both shoulders and wrists, and there was some "mild" synovial thickening of some of the finger joints. (R. at 140.) Grip strength was full, and nerve functions were intact bilaterally. (R. at 140.) Neither extremity revealed any edema. (R. at 141.) X-rays of Bowers's lumbar spine showed no evidence of facet arthrosis or significant bony abnormality. (R. at 144.) X-rays of Bowers's left knee were normal, and an x-ray of his right knee showed a patellar traction spur. (R. at 146, 148.) Dr. Humphries diagnosed hypertension, mild degenerative joint disease in Bowers's shoulders, knees, hands and feet, chronic lumbar strain with possible degenerative joint disease of the lumbar spine, nondermatomal peripheral neuropathy of the lower extremities, possible degenerative joint disease of the elbows and cervical spine and possible early mild chronic obstructive pulmonary disease. (R. at 141.) Dr. Humphries opined that Bowers would be limited to sitting for up to six hours in an eight-hour workday with appropriate pain management modalities, that he would be limited to standing and walking for up to six hours in an eight-hour workday and that he could occasionally lift and carry items weighing up to 50 pounds and up to 25 pounds frequently. (R. at 141.) He reported that Bowers could not climb, kneel or crawl and that he should avoid heights, hazards and fumes. (R. at 141-42.)

On March 22, 2007, Dr. Richard Surrusco, M.D., a state agency physician, indicated that Bowers had the residual functional capacity to perform light work. (R. at 247-53.) Dr. Surrusco indicated that Bowers could occasionally climb, balance, stoop, kneel, crouch and crawl and that he should avoid concentrated exposure to temperature extremes, wetness, humidity, noise, vibration and fumes. (R. at 249-50.) Dr. Surrusco indicated that Bowers should avoid all exposure to working hazards, such as machinery and heights. (R. at 250.) No manipulative, visual or communicative

limitations were noted. (R. at 249-50.)

On June 7, 2007, Dr. Donald R. Williams, M.D., a state agency physician, indicated that Bowers had the residual functional capacity to perform light work. (R. at 129-35.) Dr. Williams indicated that Bowers could occasionally climb, balance, stoop, kneel, crouch and crawl and that he should avoid concentrated exposure to temperature extremes, wetness, humidity, noise, vibration and fumes. (R. at 131-32.) Dr. Williams indicated that Bowers should avoid all exposure to working hazards, such as machinery and heights. (R. at 132.) No manipulative, visual or communicative limitations were noted. (R. at 131-32.)

### *III. Analysis*

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2009); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2009).

Under this analysis, a claimant has the initial burden of showing that he is

unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2009); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated June 16, 2008, the ALJ denied Bowers's claims. (R. at 15-21.) The ALJ determined that the medical evidence established that Bowers suffered from severe impairments, namely degenerative joint disease of multiple joints, chronic lumbar strain, peripheral neuropathy of both lower extremities, hypertension, status post hernia repair and possible early chronic obstructive pulmonary disease, but he found that Bowers did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17-18.) The ALJ found that Bowers had the residual functional capacity to perform medium work limited by an inability to perform more than occasional climbing, kneeling and crawling and further limited by an inability to work at unprotected heights, around hazards or machinery and around fumes and irritants. (R. at 18-19.) The ALJ further found that Bowers needed the ability to stop and stretch once or twice an hour, to use the bathroom on normal breaks and to stop and think about what he was doing approximately three to four times per hour for very short periods of time without being off task due to a moderate reduction in his ability to maintain attention

and concentration. (R. at 19.) Thus, the ALJ found that Bowers was able to perform his past relevant work as a forklift operator and a service representative/merchandise displayer. (R. at 20.) Therefore, the ALJ found that Bowers was not under a disability as defined under the Act at any time through the date of his decision and was not eligible for benefits. (R. at 21.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

Bowers argues that the ALJ erred by finding that he had the residual functional capacity to perform medium work. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-7.) Bowers also argues that the ALJ erred by failing to properly consider the effects of his bowel problems on his ability to perform substantial gainful activity. (Plaintiff's Brief at 7-8.) Bowers further argues that the ALJ erred by failing to give greater weight to the opinions of the state agency physicians in determining his residual functional capacity. (Plaintiff's Brief at 8-9.)

The ALJ in this case found that Bowers had the residual functional capacity to perform a limited range of medium work. (R. at 18-19.) The ALJ also found that Bowers could perform his past work as a forklift operator and a service representative. (R. at 20.) Based on my review of the record, I find that substantial evidence exists to support the ALJ's finding with regard to Bowers's residual functional capacity.

On September 19, 2006, less than one month prior to the alleged onset date, a physical examination was completely negative, and Bowers did not identify any significant past medical history. (R. at 239.) On November 30, 2006, despite Bowers's complaints of pain and swelling of his right wrist with aggravating activity, he specifically denied any numbness or tingling. (R. at 208.) An x-ray of Bowers's

-10-

Case 2:09-cv-00005-JPJ-PMS   Document 15   Filed 10/14/09   Page 10 of 13   Pageid#: 58

right wrist, taken in November 2006, was unremarkable. (R. at 153.) Although Bowers was diagnosed with a ganglion cyst, his functioning was within normal limits, and excision of the cyst was cancelled because it was not visible. (R. at 241, 262.) In March 2007, Bowers's radial, median and ulnar nerve functions were intact bilaterally, he had no sensory loss to light touch and he was able to adequately perform fine manipulation bilaterally. (R. at 140.) Tinel sign was negative bilaterally, and he had normal grip strength. (R. at 140.) Bowers had "slight" reduction in motion in some of his hand joints. (R. at 140.)

While Bowers alleges that he is disabled as a result of his bowel problems, the treatment notes indicate that in November 2006, Bowers reported that he was doing much better, that he had one to two bowel movements a day with no bleeding and decreasing pain on defecation. (R. at 209.) In February 2007, Bowers reported that he was doing well and having good bowel movements. (R. at 268.) In addition, in March 2007, Bowers did not report a problem with his bowel functioning when he presented for his consultative examination with Dr. Humphries. (R. at 139.)

Bowers also argues that the ALJ failed to give greater weight to the opinions of the state agency physicians. (Plaintiff's Brief at 8-9.) The ALJ noted that he gave greater weight to the opinion of Dr. Humphries because it was based on a personal examination and was consistent with the record as a whole. (R. at 20.) The ALJ noted the objective findings which showed that Bowers had negative lumbar spine and knee x-rays, normal physical examination findings and surgery records that were void of subsequent limitations or restrictions. (R. at 20, 144, 146, 148, 166, 171-72, 183-85, 193, 212.) Based on this, I find that the ALJ properly weighed the medical evidence

-11-

of record.

For all of the above-stated reasons, I find that substantial evidence does support the ALJ's finding that Bowers had the residual functional capacity to perform his past relevant work.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the Commissioner's finding that Bowers had the residual functional capacity to perform a limited range of medium work;

2. Substantial evidence exists to support the Commissioner's finding that Bowers could perform his past work as a forklift operator and a service representative;

3. Substantial evidence exists to support the ALJ's weighing of the medical evidence; and

4. Substantial evidence exists to support the Commissioner's finding that Bowers was not disabled under the Act and was not entitled to DIB or SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court grant the Commissioner's motion

for summary judgment, deny Bowers's motion for summary judgment and affirm the decision of the Commissioner denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 14th day of October 2009.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE